# Jacobi *et al. v.* The State.

*Indictment for Permitting Gaming on Premises.*

1. *The managers of a club are indictable, if gaming on the premises is permitted.*—The managers of a social club, whose members alone are permitted to buy spirituous liquors, sold in its rooms, may be indicted for permitting gaming on the premises.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

Emile Jacobi, Jacob Simmons, S. Roswald and Louis Goetter, were indicted at the July term, 1877, of the City Court of Montgomery, for permitting gaming on their premises. The defendants pleaded not guilty. They were the managers or superintendents of the "Standard Club," which was incorporated under the general laws of the State. It consisted of about fifty members, all of whom were "resident citizens" of Montgomery. The society was organized for literary and social purposes, and had a constitution and by-laws. According to them, no person not a member, unless expressly invited, could enter the premises, or be present

[Jacobi et al. v. The State.]

at a meeting of the club. A record of all such visitors was kept, and no one residing in the city of Montgomery was permitted to enter the club-rooms more than once. Both the rooms and the meetings of the club were strictly private. It occupied for its purposes, three rooms on the second and third stories of a building in the city of Montgomery. Persons could easily pass from one of these rooms to the others. Spirituous liquors were purchased with the funds of the club, taken to the building and sold in one of the rooms of the club, to its members only. No person, not a member, ever bought or paid for liquors at the club-rooms.

During the time spirituous liquors were sold under the authority of the club, its members played cards in another of the rooms. At such games, money was sometimes bet. The defendants knew and permitted the card-playing. There was no conflict in the testimony, and the following charge in writing was requested on the part of the State and given by the court:

"If the jury believe the evidence, beyond a reasonable doubt, they must find the defendants guilty, as charged in the indictment."

To this charge the defendants excepted.

No counsel for appellants.

JOHN W. A. SANFORD, Attorney-General, *contra*.

MANNING, J.—The question here presented is, whether or not an incorporated social club, whose rooms are used in common by its members only and such other persons as may under its rules be invited thereto, for reading, conversation and diversion, and in one of which rooms spirituous liquors are sold by an agent of the club to its members—but to no other persons—can knowingly suffer gaming with cards, or dice, or any device or substitute for either, to be done in another of said rooms by said members or guests invited thereto as aforesaid, without a violation of law.

In the case of *Sol. Martin v. The State*, decided a few days ago, this court held that the agent of this same club, who sold liquors therein, for the club, to its members, without a license, was guilty of a violation of section 3618 of the Revised Code of 1867, prohibiting the retailing of spirituous or vinous liquors without a license, and sustained a conviction of such agent for that offence, and the judgment thereupon. From this decision, it seems to follow that the appellants here, who, by

[Noble v. The State.]

·election of the members of the club, had the superintendence of its rooms and affairs, are, under the evidence in the case, liable to the penalties denounced by section 3625 of the same ·code, against "any person, who being a licensed retailer, or the keeper, proprietor, owner or superintendent of . . . any house where spirituous liquors are sold, retailed, or given ·away, . . . knowingly suffers" the gaming prohibited by previous sections to be done therein. As was said in a recent ·case of *Campbell v. The State* (in manuscript), it is the evils that flow from the alliance between the two occupations of retailing and gaming—the stimulus to each of the two vices of play and drinking to excess, which is reciprocally produced by the indulgence in both at the same time, that the statute was enacted to prevent. And though it was, evidently, not within the intention of the club, in this case, to foster these evils, ·and their purpose was to afford the means of diversion and to cultivate friendly social feeling among the members, we are constrained to hold that the statute referred to was violated,—and the judgment must be affirmed.